```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| MOBILE DREDGING & PUMPING CO., | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil No. 04-4624 (JBS) |
| CITY OF GLOUCESTER, N.J., and S.T. HUDSON ENGINEERING, INC., | **OPINION** |
| Defendants. | |

APPEARANCES:

Jamie L. Sandman, Esq.
COHEN, SEGLIAS, PALLAS, GREENHALL & FURMAN
2 White Horse Pike
Haddon Heights, NJ 08035
    and
Thomas Sweeney, Esq.
COHEN, SEGLIAS, PALLAS, GREENHALL & FURMAN
1515 Market St., 11th Floor
Philadelphia, PA 19102
    Attorneys for Plaintiff

Lance S. Forbes, Esq.
PARKER MCCAY & CRISCULOLO, P.A.
Three Greentree Centre
7001 Lincoln Drive West
Marlton, NJ 08053
    Attorney for Third Party Plaintiff, City of Gloucester, NJ

Edward V. Cattell, Jr., Esq.
HOLLSTEIN, KEATING, CATTELL, JOHNSON & GOLDSTEIN, P.C.
Willow Ridge Executive Office Park
750 Route 73 South, Suite 301
Marlton, NJ 08053
    Attorney for Third Party Defendant, S.T. Hudson Engineers, Inc.

**SIMANDLE,** District Judge:

I. <u>Introduction</u>

    A.  <u>Background</u>

On October 2, 2001, Plaintiff Mobile Dredging & Pumping Co. ("Mobile") entered into a contract with Third Party Plaintiff, City of Gloucester ("Gloucester" or "City"), to dredge a marina being built by the City on the Delaware River. (Third Party Compl. at ¶5.) Gloucester hired Third-Party Defendant, S.T. Hudson Engineering ("Hudson"), to design and oversee the project since the City did not have its own engineering department. (<u>Id.</u> at ¶5.) Under Mobile's contract with the City, the dredging was to begin within twenty days of execution, no later than October 22, 2001. However, work did not begin until December 12, 2001. (<u>Id.</u> at ¶6.) The primary reason for the late start was a holdup in securing a dredging permit from the New Jersey Department of Environmental Protection ("DEP"), the obtainment of which was Gloucester's responsibility pursuant to its contract with Mobile. (<u>Id.</u> at ¶8.) The DEP initially refused to issue a permit after discovering that the polymer to be used by Mobile was dangerously toxic and only granted permission to dredge once the parties had devised a safer method of using the polymer. (<u>Id.</u> at ¶¶10-13.) The project was also delayed by the City's low water pressure and volume, which made hydraulic dredging impossible since Mobile was to use the City's water supply. (<u>Id.</u> at ¶¶15-17.) Only after

Mobile obtained additional pumps could it achieve the requisite pressure and volume for hydraulic dredging. (Third Party Resp. at 3.) On January 31, 2002, Mobile completed dredging, (id. at ¶7), but the City, based on soundings conducted by Hudson, claimed Mobile had not reached the necessary depth and requested that Mobile try again. (Third Party Resp. at 3.) After re-dredging, Mobile still had not achieved the proper depth, again according to Hudson's calculations, at which time Gloucester hired another firm to complete the project. (Id. at 3-4.)

On September 23, 2004, Mobile commenced suit, (Docket Item No. 1), for breach of contract against Gloucester and for negligence against Hudson, requesting the contract balance as well as damages. (Mobile Compl. at ¶¶16-17.) Mobile claims it did an independent depth calculation and found that, despite Hudson's findings to the contrary, it had dredged deep enough and therefore fulfilled its obligations under the contract with the City. (Third Party Resp. at 9.) Furthermore, Mobile alleges that due to Gloucester and Hudson's failures to secure a timely permit and to provide an adequate water supply, it was forced to work during winter, which led to additional damages. (Mobile Compl. at ¶¶25-28.) On October 27, 2004, Hudson made a Rule 12(b)(6) motion to dismiss all of Mobile's claims against it, (Docket Item No. 4), and this motion was granted on November 30, 2004. (Docket Item No. 7.)

On March 9, 2005, Gloucester filed a third party complaint against Hudson, (Docket Item No. 15), claiming that Hudson is responsible for any and all damages the City may owe to Mobile. Prior to signing its contract with Mobile, Gloucester entered into a contract with Hudson by which Hudson was to provide engineering consultation and services in conjunction with that project. (Compl. at ¶22.) Though neither Hudson nor Gloucester has submitted a copy of their contract with their briefs, Gloucester asserts that the contract contained an indemnification clause requiring Hudson to pay the City for any loss the City suffered attributable to the acts or omissions of Hudson. (Id. at ¶23.)

Gloucester argues that Hudson did or failed to do three things that caused it to be potentially liable to Mobile. First, the City argues that Hudson's failure to secure the DEP permit in time, attainment of which was Hudson's responsibility, (id. at ¶9), contributed to Mobile's damages by forcing Mobile to operate during the winter. (Third Party Resp. at 3.) Second, Gloucester contends that Hudson failed to verify Mobile's water pressure requirements which also delayed the start of the project and therefore also contributed to Mobile's alleged damages. (Id. at 3.) Third, Gloucester maintains that if Hudson's depth calculations were wrong, as is being claimed by Mobile, Hudson

would be responsible for any of the City's liability to Mobile stemming from those faulty calculations. (Id. at 4.)

Gloucester's Complaint contains five counts. Count One asks for contractual indemnity in the event of a successful suit by Mobile. (Compl. at ¶¶21-25.) Count Two claims common law indemnity; Count Three claims contribution; Count Four claims set off damages; and Count Five claims damages for professional malpractice. (Id. at ¶¶26-36.)

On April 5, 2005, Hudson filed the present motion to dismiss Gloucester's third party complaint for failure to state a claim, pursuant to Rule 12(b)(6). (Docket Item No. 19.) Hudson argues that none of the delays in the project are its responsibility. Hudson first claims that it took all necessary steps in securing the DEP permit, but that the delay can be attributed to Mobile's misrepresentation of the polymer's toxicity. (Hudson Motion at 4-5.) Hudson next claims that the delay in providing the proper water pressure can also be attributed to Mobile, and therefore Gloucester cannot state a claim against Hudson for any damages attributed to that delay. (Id. at 6-7.) Hudson argues that since Mobile never specified the water pressure it needed, and since supplying the water was actually the City's responsibility, it did nothing wrong that could create a cause of action against it. (Id. at 6-7.) Additionally, Hudson says that it performed its duties in a professional and workmanlike manner so any

5

allegations to the contrary cannot be sustained.  (Id. at 8.) Based on these arguments, Hudson maintains that all five of Gloucester's counts should be dismissed for failure to state a claim.  For the reasons explained below, Hudson's motion will be granted in part and denied in part.

II.  Discussion

   A.  Standard of Review

   A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A district court must accept any and all reasonable inferences derived from those facts.  Unger v. Nat'l Residents Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991); Gutman v. Howard Sav. Bank, 748 F. Supp. 254, 260 (D.N.J. 1990).  Further, the court must view all allegations in the Complaint in the light most favorable to the plaintiff.  See Scheuer, 416 U.S. at 236; Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

   It is not necessary for the plaintiff to plead evidence, and it is not necessary to plead the facts that serve as the basis for the claim.  Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977); In re Midlantic Corp. Shareholder Litigation, 758 F. Supp. 226, 230 (D.N.J. 1990).  The question before the court is

6

not whether plaintiffs will ultimately prevail; rather, it is whether they can prove any set of facts in support of their claims that would entitle them to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff's allegations state a legal claim. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  Only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint matter, are taken into consideration.  Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

    B.  Contractual Indemnity

Hudson asserts that Gloucester fails to state a claim for contractual indemnity.  Gloucester submits that its contract with Hudson contained a clause to "indemnify the city for any loss the city suffers attributable to the acts and/or omissions of [Hudson]."  (Compl. at ¶23.)  Hudson does not deny the existence of this indemnity clause with Gloucester, but it argues that its conduct during the project does not satisfy the criteria of that clause since it was not responsible for the delays in the dredging operation and since it performed its duties in a professional manner.  (Id. at 9.)  However, for the reasons set

forth below, Hudson's motion as to contractual indemnity can not be granted at this juncture.

In New Jersey, contract indemnity clauses should be interpreted like all contracts, looking at both the language of the contract and the intent of the parties. <u>Cozzi v. Owens Corning Fiber Glass Corp.</u>, 164 A.2d 69, 71 (N.J. Super. Ct. App. Div. 1960). However, New Jersey law does not require specificity in indemnity clauses nor does it require strict construction of those clauses. <u>First Jersey Nat. Bank v. Dome Petroleum Ltd.</u>, 723 F.2d 335, 339-340 (3d Cir. 1983). Indeed, parties to an indemnity contract may use broad language and need not list exactly which harms they intend to cover. <u>Id.</u> at 340.

Here, the language of the indemnity clause is simple and straightforward. The clause requires Hudson to reimburse the City for "any loss the city suffers attributable to the acts and/or omissions of [Hudson]." (Compl. at ¶23.) Gloucester alleges that Hudson, as a professional engineering firm, failed to properly advise it, and therefore, under the indemnity clause, is responsible for damages that Gloucester may owe Mobile. The City lays out specific instances where Hudson mismanaged the project, including Hudson's failure to file for the DEP application in a timely fashion and failure to respond to DEP requests for more information regarding the polymer to be used by Mobile. (Third Party Resp. at 6-7.) Additionally, Gloucester

maintains that Hudson, through conversations with Mobile's engineers, knew about Mobile's water pressure requirements but did nothing to ensure the City's water supply would be sufficient.  (Id. at 7-9.)  Finally, Gloucester asserts that Hudson's depth calculations may have been incorrect, but acknowledges the need for expert analysis for final determination.  (Id. at 9.)  These failures by Hudson, Gloucester maintains, surely fall within the scope of the indemnification clause.

Hudson, on the other hand, blames Mobile for the dredging problems, and asserts that it therefore need not indemnify the City.  However, the issue here is not what Mobile did, but whether Hudson is alleged to have violated its contract with Gloucester and, as a result, whether a claim may lie for it to indemnify Gloucester.  While Hudson denies having done anything that would require it to indemnify the City, Gloucester alleges otherwise.  Gloucester claims – and as a Rule 12(b)(6) motion this Court must accept these claims as true – Hudson was at fault in failing to secure a timely permit, in failing to advise the City on the necessary water pressure, and in failing to conduct proper depth calculations.  Surely, such conduct could be described as "acts or omissions" and, if proven to have contributed to the City's liability, could fall within the scope of the parties indemnity clause.  Ultimately, of course, it will

9

take a factual finding to determine exactly what the parties intended to cover within the indemnity clause and whether Hudson's conduct falls within those parameters. Nonetheless, at this time Gloucester has stated a claim upon which relief may be granted and, therefore, Hudson's Rule 12(b)(6) motion to dismiss must fail.

    C.  <u>Common Law Indemnity and Contribution</u>

Hudson also argues that Gloucester has not stated a claim upon which relief can be granted for common law indemnity or contribution. (Hudson Motion at 9.) For the reasons set forth below, Hudson's motion as to Counts Two and Three will be granted.

Common law indemnity, often applied in products liability cases, allows a defendant to recover from a third party all damages awarded against it, even in the absence of an indemnity contract between those parties. <u>Harley Davidson Motor Co. v. American Die</u>, 696 A.2d 666, 671 (N.J. 1997). In order to claim common law indemnity, the third party plaintiff must only be constructively liable and not actually at fault for the damages suffered by the plaintiff; in such circumstances, the third party plaintiff may recover from a third party defendant that actually caused the injuries but was not named as a party in the original suit. <u>Adler's Quality Bakery, Inc. v. Gaseteria, Inc.</u>, 159 A.2d 97, 110 (N.J. 1960). The rationale behind common law indemnity

is to equitably shift the burden from the party that is technically liable to the party that is actually culpable for the damages. Public Service Elec. & Gas, Co. v. Waldroup, 119 A.2d 172, 179 (N.J. Super. Ct. App. Div. 1956).

In this instance, however, Gloucester has been sued for contractual violations and unjust enrichment, not for a tort claim such as negligence. Common law indemnity is a means of restitution to be used by one tortfeasor against another, and not when the third party plaintiff's liability is based on a breached contract between it and the original plaintiff. See Restatement § 96 of Restitution (First) ("A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability.") (emphasis added). There is no New Jersey precedent that proposes a party sued for breach of contract can exercise the benefit of common law indemnity to recover from a third party its losses associated with that contractual breach. Therefore, Hudson's motion to dismiss for failure to state a claim as to Count Two will be granted.

Likewise, Hudson's motion to dismiss Count Three for contribution will also be granted. Under the Joint Tortfeasors Contribution Act, one tortfeasor may seek contributions from another tortfeasor in circumstances

11

>            where injury or damage is suffered by any
> person as a result of the wrongful act, neglect or default of
> joint tortfeasors, and the person so suffering injury or damage
> recovers a money judgment or judgments for such injury or damage
> against one or more of the joint tortfeasors, either in one
> action or in separate actions, and any one of the joint
> tortfeasors pays such judgment in whole or in part, he shall be
> entitled to recover contribution from the other joint tortfeasor
> or joint tortfeasors for the excess so paid over his pro rata
> share. . . .

N.J.S.A. 2A:53A-3.  Contribution remedies the inequitable common law outcome, where one tortfeasor among many would be liable to the plaintiff for all the damages, with no means of recovering from the other tortfeasors.  Tino v. Stout, 229 A.2d 793, 798 (N.J. 1967).  New Jersey provides a statutory definition of joint tortfeasors as "two or more persons jointly or severally liable in tort for the same injury to person or property. . . ." N.J.S.A. 2A:53A-1.

In this instance, Gloucester and Hudson do not satisfy the definition of joint tortfeasors, as defined by New Jersey statute, and, as such, Gloucester cannot seek contributions from Hudson.  While Mobile attempted to join both Hudson and Gloucester in suit, this Court, pursuant to Rule 12(b)(6), dismissed the negligence Count against Hudson for failure to state a claim upon which relief could be granted; Hudson, this Court found, could not be held liable to Mobile since a plaintiff may not sue a third party for negligently interfering with a contractual obligation.  (November 30, 2004, Memo. Order at 2-3.)

Hudson, therefore, is not jointly or severally liable in tort for the alleged injuries sustained by Mobile and cannot be considered a joint tortfeasor, thereby precluding Gloucester from seeking contributions from Hudson for any potential damages awarded to Mobile.  Thus, Count Three of Gloucester's third party complaint will be dismissed for failure to state a claim upon which relief can be granted.

    D.  <u>Set Off</u>

In Count Four of its Complaint, Gloucester asks for set off damages from Hudson for any amount owed to Mobile.  (Compl. at ¶¶31-33.)  However, as Hudson argues, a set off is similar to a counter-claim and is not proper as part of an initial complaint.  Count Four will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

A set off is defined as "[a] defendant's counterdemand against the plaintiff, arising out of a transaction independent of the plaintiff's claim."  <u>Black's Law Dictionary 1376</u> (7th ed. 1999).  Set offs are relevant in situations where A has a cause of action against B, and B has a separate cause of action against A - B could counter-claim against A for set off damages for any amount that A owes to B.  <u>Id.</u> at 1376.

In the context of Gloucester's third party suit against Hudson, a set off is not proper.  Gloucester has not been sued by Hudson and therefore cannot make a set off claim against Hudson,

13

just as a plaintiff could not include a counter-claim against a defendant in its original complaint.  Neither in its Complaint nor in its opposition to Hudson's Brief, does the City cite to any New Jersey precedent that suggests a third party plaintiff could have a cause of action for a set off against a third party defendant.  Therefore, Count Four of Gloucester's Complaint should be dismissed for failure to state a claim upon which relief can be granted.

    E.   Professional Malpractice

Finally, Hudson argues that Count Five of Gloucester's Complaint should be dismissed pursuant to Rule 12(b)(6).  Hudson asserts that there is nothing in Gloucester's Complaint to create a cause of action for professional malpractice since Hudson never failed in its professional duty.  (Hudson Motion at 10.) However, for the reasons explained below, Gloucester has stated a proper claim and, therefore, Hudson's motion to dismiss will be denied.

A prima facie showing of professional malpractice requires a plaintiff to prove that the professional in question had a duty to the plaintiff, that the professional's conduct fell below the industry standard, and that the professional's negligence was the proximate cause of the plaintiff's injuries.  See F.G. v. MacDonell, 677 A.2d 258, 263 (N.J. Super. Ct. App. Div. 1996) (discussing cause of action for professional malpractice).  In

14

New Jersey, engineers are considered professionals in the context of malpractice suits. See N.J.S.A 2A:53A-26 (including engineers as licensed person for purpose of professional malpractice suits). Typically, the professional standard of care must be decided during trial through expert witnesses and cannot be resolved in the pleadings. MacDonell, 677 A.2d at 262.

Under this standard, Gloucester had stated a claim upon which relief can be granted. The City argues that it hired Hudson to provide engineering consultation for the duration of the dredging project, and that, in signing a contract, Hudson owed the City a duty to perform at a reasonable professional standard. (Compl. at ¶5.) Though Hudson denies any negligence, Gloucester clearly disagrees. In its Complaint and Response to Hudson's Brief, the City claims that Hudson provided sub-par engineering assistance, which in turn, made the City potentially liable to Mobile. Gloucester argues that Hudson owed it a duty to file for a timely DEP permit; that Hudson should have known Mobile's water pressure requirements and act accordingly; and that Hudson may have negligently performed depth calculations. (Third Party Resp. at 6-10.) In accordance with Rule 12(b)(6), this Court must accept these pleadings as true and accurate, in which case Gloucester has stated a claim upon which relief can be granted for professional malpractice. Therefore, Hudson's motion to dismiss will be denied as to Count Five.

III.  <u>Conclusion</u>

    For the foregoing reasons, Third Party Defendant Hudson's motion to dismiss will be granted in part and denied in part. The accompanying Order is entered.


**August 4, 2005**                                            **s/ Jerome B. Simandle**
DATE                                                              JEROME B. SIMANDLE
                                                                     United States District Judge